# IN THE U.S. DISTRICT COURT OF MARYLAND
# FOR DISTRICT OF MARYLAND

| | |
|---|---|
| **Mr. Craig Dorsey** \* | |
| 2415 Sunshine Way | |
| Gambrills, Maryland 21054 \* | |
| | |
| and \* | |
| | |
| **Ms. Simone D. Nathaniel** \* | |
| 3617 Fairview Avenue | |
| Baltimore, Maryland 21216 \* | |
| | |
| *On behalf of themselves and* \* | |
| *others similarly situated* | |
| \* | |
| Plaintiffs | |
| \* | |
| v. | Case No. 10-00092 CCB |
| \* | |
| **The Greene Turtle Franchising Corp.** | |
| 3213A Solomon's Island Road \* | |
| Edgewater, Maryland 21037 | |
| \* | |
| a Maryland Corporation | |
| \* | |
| and | |
| \* | |
| **TGT Consulting, LLC** | |
| 14150 Baltimore Avenue \* | |
| Laurel, Maryland 20707 | |
| \* | |
| a Maryland LLC | |
| \* | |
| and | |
| \* | |
| **The Green Turtle BWI, LLC** | |
| 14150 Baltimore Avenue \* | |
| Laurel, Maryland 20707 | |
| \* | |
| a Maryland LLC | |
| \* | |
| and | |
| \* | |

**The Greene Turtle Annapolis, Inc.**  *
**3213A Solomon's Island Road**
**Edgwater, Maryland 21037**  *

    **a Maryland Corporation**  *

**and**  *

**Never Nervous, Inc.**  *
**d/b/a Greene Turtle (Laurel, Maryland)**
**14150 Baltimore Avenue**  *
**Laurel, Maryland 20707**

    *

    **a Maryland Corporation**

    *

**and**

    *

**The Greene Turtle Salisbury, LLC**
**618 N. Salisbury Blvd., #320**  *
**Salisbury, Maryland 21801**

    *

    **a Maryland LLC**

    *

**and**

    *

**The Greene Turtle Towson, LLC**
**408 York Road**  *
**Towson, Maryland 21204**

    *

    **a Maryland LLC**

    *

**and**

    *

**Turtle Shell Enterprises, LLC**  *
**14150 Baltimore Avenue**
**Laurel, Maryland 20707**  *

    **a Maryland LLC**  *

**and**  *

**Mr. J. Michael Sanford**  *
**c/o The Greene Turtle Franchising Corp.**
**3213A Solomon's Island Road**  *
**Edgwater, Maryland 21037**

|  |  |
|---|---|
| and | * |
|  | * |
| Ms. Teri DeVito | |
| c/o TGT Consulting, LLC | * |
| 14150 Baltimore Avenue | |
| Laurel, Maryland 20707 | * |
|  | |
|     a Maryland LLC | * |
|     **Defendants** | |

**THIRD AMENDED COLLECTIVE ACTION COMPLAINT UNDER THE
FAIR LABOR STANDARDS ACT FOR MONEY DAMAGES**

Plaintiffs, Mr. Craig Dorsey and Ms. Simone D. Nathaniel, on behalf of themselves and others similarly situated, and through undersigned counsel, state a first amended collective action complaint against Defendant The Greene Turtle Franchising Corporation, The Greene Turtle BWI, LLC, TGT Consulting, LLC, The Greene Turtle Annapolis, Inc., Never Nervous, Inc., The Greene Turtle Salisbury, LLC, The Greene Turtle Towson, LLC, Turtle Shell Enterprises, LLC, Mr. J. Michael Sanford and Ms. Teri DeVito ("Defendants"), who together are individually and jointly liable as a single enterprise pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and demand a jury trial, as follows:

<u>**Introduction, Venue, and Jurisdiction**</u>

1.     This is a lawsuit brought by Plaintiffs Dorsey and Nathaniel, on behalf of all persons who have worked at a Greene Turtle bar/restaurant, even if separately incorporated, which is controlled and operated by Defendant The Greene Turtle Franchising Corporation (and Defendant individual officers), and who were paid less than the Federal minimum wage based on their classification as a tipped employee. Plaintiff Dorsey is a resident of Anne Arundel County, Maryland. Plaintiff Nathaniel is a resident of Baltimore City, Maryland. By failing to pay the Plaintiffs, and others similarly situated, the minimum wage and overtime amounts due,

from time to time, Plaintiffs allege that Defendants violated the overtime and minimum wage provisions of the FLSA.

2.      In addition to actual sums owed, Plaintiffs seek liquidated damages pursuant to the FLSA, attorneys' fees and costs as provided under the FLSA.

3.      Defendant "The Greene Turtle Franchising Corporation" is a corporate entity which owns in whole or in large part, numerous bar-restaurants located throughout the State of Maryland, the Commonwealth of Virginia, the State of Delaware, an the District of Columbia, doing business as "The Greene Turtle."  In furtherance of its business purpose of serving food and beverages to its patrons in a sports/college-bar like atmosphere, Defendant Greene Turtle Franchising Corporation, the "parent" entity, owns and operates certain "subsidiary" locations according to a strict and distinct manner and methods of operations.  In addition, Defendant Greene Turtle Franchise Corporation sells franchises and licenses its strict and distinct manner and methods of operations.  All bar/restaurants operate under the trademark "The Greene Turtle."  For each subsidiary location that it owns, Defendant Greene Turtle Franchising Corporation has incorporated numerous corporations and limited liability corporations, all for the ostensible purpose of shielding its liability.  Upon information and belief, there are at least 10 Company-owned "The Greene Turtle" restaurant/bars, which are the subsidiaries of the parent Defendant, and together, constitute a single enterprise for purposes of the FLSA.  Upon further information and belief, Defendant "The Greene Turtle Franchising Corporation" is run by the Company's President/CEO, Mr. Michael Sanford, and this entity controls or otherwise exerts influence over other corporate entities which all serve the common business purpose of serving food and beverages to its patrons under its distinct trademark, menu, and methods.  For instance, the following limited liability corporations all share common characteristics, i.e., they

serve food and beverage under The Greene Turtle trademark and operate their businesses according to strict guidelines and standards set forth by their parent, Defendant The Greene Turtle Franchise Corporation: The Greene Turtle Salisbury, LLC; Never Nervous, LLC, Turtle Shell Enterprises, LLC, The Greene Turtle Annapolis, LLC, The Greene Turtle Towson, LLC; The Green Turtle La Plata, LLC; The Greene Turtle BWI, LLC, among others. These restaurants are all separately incorporated so that Defendants The Greene Turtle Franchising Corporation and Defendant Sanford can *attempt* to shield this single business enterprise from liability, including liability for employment law violations.

4.      Defendant The Greene Turtle Franchising Corporation has strict human resource and personnel guides which control not just its subsidiaries, but also additional franchised locations owned by investors. For instance, Defendant The Greene Turtle Franchising Corporation sets forth in its "Franchise Operations Manual" (FOM), a section titled "The Profile the Ideal Greene Turtle Employee." The FOM provides instruction to its restaurants as to how to recruit employees, interview employees, train employees, and track the work time of employees. In addition, the FOM provides personnel policies, and procedures for disciplining and terminating employees. In addition, TGT Consulting, LLC provides payroll services to *at least* all of its subsidiary locations (and possibly licensed and franchised locations), and calculates minimum wages and overtime owed to each employee who works at each subsidiary location of Defendant The Greene Turtle Franchise Corporation, the parent (and possibly licensed and franchised locations). Taken together these instructions control the manner and methods by which Greene Turtle restaurants employ, pay, retain, and terminate workers. Defendant The Greene Turtle Franchise Corporation operates a website in which prospective employees can apply for employment at any Greene Turtle bar/restaurant location.

5. The Plaintiffs worked as tipped employees (servers) at a location incorporated as The Greene Turtle BWI, LLC, which is an LLC owned and operated by the parent, Defendant The Greene Turtle Franchising Corp., and is one of the several "The Greene Turtle" locations. It is located in BWI airport, and it is frequented by patrons who are traveling in interstate commerce. At all times material herein, the corporate Defendants, in the aggregate (as a single business enterprise) and as individual business entities (each separate restaurant), have had annual gross volume of sales made or business done in an amount exceeding $500,000.00. All Greene Turtle locations which are company-owned and operated have, upon information and belief, the same corporate officers/directors/shareholders, and managers of these locations report to the same corporate management team, who have the power to hire and fire them. Restaurant managers may be employed, from time to time, at different Greene Turtle restaurants, and are transferred by the parent entity. Upon information and belief, Defendant TGT Consulting, LLC was incorporated as a means of providing centralized human resource functions for multiple Company-operated locations. Defendant TGT Consulting, LLC is the payroll employer of the Plaintiffs, and upon information and belief, and it serves that same function for all other Company-operated locations. It is run by Defendant Ms. Teri DeVito, who upon information and belief, is an officer of the Defendant parent, the Greene Turtle Franchising Corp. Defendant DeVito is assigned all human resource issues associated with Company-owned Greene Turtle restaurants, and upon information and belief, even provides assistance to franchised restaurants. Defendant DeVito supervises the payment and calculations of wages, including the proper rate to pay employees for overtime. At all times material herein, Defendant Sanford is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and

thus, Defendant Sanford is jointly and individually liable under for damages to the Plaintiff, and others similarly situated, arising under the FLSA.

6.      Defendant The Greene Turtle Franchising Corporation, and each of the other corporate subsidiary Defendants, have at least two or more employees who are engaged in commerce, produce goods for commerce, or handle, sell, or otherwise work on goods or materials that have moved in or were produced for commerce. For instance, there are employees of the Defendants that sell franchises in interstate commerce. There are employees who design menu offerings and negotiate with food producers and suppliers who operate in interstate commerce. There are employees who cook, serve, and otherwise handle this food, as well as alcoholic beverages, that cross interstate and even international boundaries. There are employees who regularly use wire and electronic means of communicating interstate, including the Plaintiffs who regularly sell food that has moved in interstate commerce, and who regularly process credit card transaction for customer payments. There are employees who use, in the restaurants and Defendants' offices, cleaning products, dishes, utensils, napkins, menus and signage that has moved in interstate commerce. Accordingly, subject matter jurisdiction exists because the Plaintiffs, along with other similarly situated employees (servers, bartenders, and bar-backs) are: (a) either subject to individual coverage; and/or (b) are employed by the Defendants, a single enterprise, which satisfies the enterprise coverage provisions under the FLSA. As a single enterprise, Defendants have been at all times material herein an "employer" within the meaning of the FLSA.

7.      Upon information and belief, Mr. J. Michael Sanford serves as the Chief Executive Officer (or President) of each of the Company-operated corporate entities, including The Greene Turtle BWI, LLC and TGT Consulting, LLC. Defendant Sanford is actively engaged in

the management and direction of employees, including those employees who set the pay rate and hours of the Plaintiff, and possesses the authority and discretion to fix, adjust, and determine hours worked and amounts paid with respect to employees at each Company-operated location, including the location where the Plaintiffs worked, The Greene Turtle BWI, LLC. Moreover, Defendant Sanford has, upon information and belief, significant ownership interest in each of the entities which operate Company-owned "The Greene Turtle" restaurant/bars, and controls significant functions of the business, and determines salaries and makes hiring decisions related to The Greene Turtle restaurant/bars. Upon information and belief, Defendant Sanford is authorized to issue checks on corporate accounts and has custody and control of employment records and is responsible for maintaining those records. Defendant Sanford has ultimate decision-making authority and responsibility over the employment practices of Defendants The Green Turtle BWI, LLC, TGT Consulting, LLC, and The Greene Turtle Franchising Corporation (and the other Defendants who are corporate subsidiaries, as well as any other Company-operated corporate entities that operate "The Greene Turtle" restaurant/bars). Accordingly, Defendant Sanford has acted directly and indirectly in the interests of all subsidiary Defendants, such as The Green Turtle BWI, LLC, TGT Consulting, LLC (and all other Company-operated corporate entities that operate "The Greene Turtle" restaurant/bars), and the parent Defendant, The Greene Turtle Franchising Corporation. At all times material herein, Defendant Sanford is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d), and thus, Defendant Sanford is jointly and individually liable under for damages to the Plaintiff, and others similarly situated, arising under the FLSA.

8. Venue is proper.

9. This Court has subject matter jurisdiction to hear these FLSA claims.

**Factual Allegations**

10.     For purposes of Plaintiffs' FLSA claims, and at all times relevant to the events alleged in this complaint, the Plaintiffs were employees of each of the Defendants, as they consist of a single enterprise, as provided under 29 U.S.C. § 203.

11.     Through various months of 2009, the Plaintiffs worked at the location of Defendant The Greene Turtle BWI as restaurant servers, where they would take food/beverage orders from guests who were on lay-overs or otherwise traveling in interstate commerce.  Plaintiffs would regularly process credit card transactions for certain purchases.

12.     There exist literally hundreds of similarly situated employees who receive income based partly on an hourly wage and partly in tips, who have worked in the last three years for The Greene Turtle at its corporate owned locations.

13.     Plaintiffs, and others similarly situated, were not exempt under the FLSA's minimum wage and overtime requirements.

14.     At various times, Plaintiffs, along with others similarly situated persons, including but not limited to, restaurant servers, bartenders, and bar-backs, worked in excess of a forty hour workweeks.

15.     The Plaintiffs were paid substantially less than the full minimum wage required under the FLSA.  The Plaintiffs, and others similarly situated, were not informed of the tip credit provisions of 29 U.S.C. § 203(m).

16.     The Defendants have violated the FLSA in three potential ways, two of which have to do with the failure of the Defendants to properly take a potential credit against the full minimum wage based on tips collected by an employee, and the other alternative basis, assuming *arguendo* that the tip credit provisions were complied with, involves the failure to pay

overtime in a proper amount, based on the tip credit.

17. First, Defendants have violated Plaintiffs' right to be paid the full minimum wage. While the FLSA allows employers to pay less than minimum wage to employees who receive tips, 29 U.S.C. § 203(m), in order to take a so-called "tip credit" and apply it towards the employee's minimum wage, an employer must inform the employee that it will take a tip credit. Defendants did not comply with the requirements of 29 U.S.C. § 203(m), by informing the Plaintiffs and others similarly situated that they were taking a tip credit.

18. Because the full minimum wage was not paid properly, and the FLSA's tip credit provisions were not complied with, the Defendants further violated the right of the Plaintiffs, and others similarly situated, to receive overtime at a rate 1 ½ times the full minimum wage.

19. Second, the Plaintiffs were paid $4.92 per hour as their overtime rate, for every hour worked over forty hours. Even if the Defendants complied with the tip credit provisions of the FLSA, the Defendants have not properly calculated the overtime rate for potentially thousands of servers and bartenders. For instance, upon information and belief, the Defendants paid all of their tipped employees $3.27 per non-overtime hour during all times relevant to this lawsuit, and upon further information and belief, have paid $4.92 per overtime hour. However, given the fact that the Defendants were seeking to take a tip credit, they should have paid the following amounts (all of which change given an amendment to 29 U.S.C. § 206, which served to increase the minimum wage.

**29 U.S.C. § 206(1)(a)(1)(A) ($5.85/hour)**
**Calculate overtime rate: (based on $3.28/hour (cash wage paid)**
**$5.85/hour (minimum wage) multiplied by 1.5 = $8.78/hour**
**$8.78**
**-$2.57 (tip credit ($5.85 - $3.28)**
**= $6.21/hour**

**29 U.S.C. § 206(1)(a)(1)(B) ($6.55/hour)**
**Calculate overtime rate: (based on $3.28/hour (cash wage paid)**
**$6.55/hour (minimum wage) multiplied by 1.5 = $9.83**
**$9.83**
**-$3.27 (tip credit ($6.55 - $3.28)**
**= $6.56/hour**

**29 U.S.C. § 206(1)(a)(1)(C) ($7.25/hour)**
**Calculate overtime rate: (based on $3.28/hour (cash wage paid)**
**$7.25/hour (minimum wage) multiplied by 1.5 = $10.88**
**$10.88**
**-$3.28 (tip credit ($7.25 - $3.28)**
**=$7.61/hour**

20. Accordingly, there can be no dispute that wages are owed to the Plaintiffs, in some amount, and that the Defendants have regularly failed to pay the Plaintiffs, and others similarly situated restaurant servers and bartenders (tipped employees), overtime wages of 1 ½ times the FLSA's minimum wage, and this is true even assuming that the tip credit provisions of the FLSA were satisfied, when Plaintiffs worked over 40 hours in a statutory workweek. Though these claims may be relatively small, in the aggregate, and upon information and belief, they likely amount to hundreds of thousands of dollars of unpaid overtime under the FLSA when considering the wide spread nature of this violation through The Greene Turtle system.

21. Defendants violated 29 U.S.C. § 203(m), by failing to inform the Plaintiffs, and others similarly situated, that they were taking a so-called "tip credit" against Defendants' minimum wage obligations.

## Causes of Action

### COUNT I
**(FLSA - Failure to Pay Minimum Wage)**
**(Failure to Comply With Tip Credit)**
**(All Defendants - Joint Employers)**

22. Plaintiff incorporates paragraphs 1-21 as set forth above, and states that Defendants' actions complained of herein constitute a willful violation of 29 U.S.C. § 206 (minimum wage),

because Defendant at all times during the Plaintiff's employment, failed to inform the Plaintiff, and other persons similarly situated, that Defendants were claiming a tip credit pursuant to 29 U.S.C. § 203(m).

23. As a result, the Defendants, as joint employers, are legally unable to claim a tip credit against their minimum wage obligations due to Plaintiffs, and Plaintiffs have a legal right to receive the full minimum wage, as required by Federal law and applicable Federal regulations.

### COUNT II
### (FLSA - Failure to Properly Pay Overtime)
### (Failure to Comply With Tip Credit)
### (All Defendants – Joint Employers)

24. Plaintiff incorporate paragraphs 1-23 as set forth above, and states that Defendants' actions complained of herein with respect to the failure to comply with the tip credit provisions of the FLSA, constitute a willful violation of Section 7(a)(1) of the FLSA, because Defendants - at all times during the Plaintiffs' employment - have failed and otherwise refused to compensate Plaintiffs, as well as other persons similarly situated persons who work(ed) at Company operated locations of The Greene Turtle, for hours in excess of forty hours in a work week at a rate of not less than one and one-half (1 ½) times the regular and applicable minimum wage of $6.55 an hour (currently $7.25 an hour), as required by Federal law and applicable Federal regulations.

25. As a result, the Defendants, as joint employers, and legally unable to claim a tip credit against their minimum wage obligations due to Plaintiffs, are required by Federal law and applicable Federal regulations to pay the Plaintiffs, and all other persons similarly situated, overtime in the amount of 1 ½ times the full minimum wage.

## COUNT III
### (FLSA - Failure to Properly Pay Overtime)
### (All Defendants – Joint Employers)
### (*Alternative Count*)

26. Plaintiffs incorporate paragraphs 1-25 as set forth above, and alternatively plead and state that even if Defendants' actions were in compliance with the tip credit provisions of the FLSA, Defendants' actions complained of herein constitute a willful violation of Section 7(a)(1) of the FLSA, because Defendants - at all times during the Plaintiffs' employment - have failed and otherwise refused to compensate Plaintiffs, as well as all other similarly situated persons who work(ed) at Company operated locations of The Greene Turtle, at a proper overtime rate after application of the so-called tip credit, for hours in excess of forty hours in a work week at a rate of not less than one and one-half (1 ½) times the regular and applicable minimum wage (currently $7.25 an hour), as required by Federal law and applicable Federal regulations.

## Prayer

Based on the foregoing allegations, Plaintiffs respectfully requests that this Court grant money damages in an amount to be determined by the evidence, exclusive of attorney's fees and costs; and in support thereof, requests this Honorable Court to issue the following Orders:

(a) Certify this action as a collective action pursuant to 29 U.S.C. § 216(b), and (i) compel all of the Defendants to provide all material contact information, including email addresses, for potential opt-in Plaintiffs who performed work as restaurant servers and bartenders at all Company operated "The Greene Turtle" locations (i.e., Annapolis, BWI, Laurel, Salisbury, Towson, Easton, Verizon Center, Lewes (DE)) and all other "The Greene Turtle locations which received/accepted payroll instructions/advice from Defendant The Greene Turtle Franchising Corporation, and its subsidiary, Defendant TGT Consulting, LLC; (ii) issue

appropriate Notices as requested in Plaintiffs' Motion for Conditional Certification; and (iii) supervise the maintenance of this collective action;

(b) Order Defendants to pay Plaintiffs and any opt-in Plaintiffs all unpaid minimum wage payments and overtime premiums determined by the Court to be due and owing to the Plaintiffs under the FLSA, as well as a sum of liquidated damages in an amount equal to the amount of any unpaid minimum wage payments and overtime premiums awarded to Plaintiffs;

(c) Award Plaintiffs their attorneys' fees and costs in pursuing this action;

(d) Award Plaintiffs interest on any sums determined due and owing from Defendants;

(e) Grant Plaintiffs any additional relief that the Court deems appropriate and just.

Respectfully submitted,


*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq.
Attorney at Law
Federal Bar No. 25965
600 Jefferson Plaza, Suite 304
Rockville, Maryland 20852
(301) 251-3752
(301) 251-3753 (fax)


*/s/ Bradford W. Warbasse (w/permission)*
Bradford W. Warbasse, Esq.
Attorney at Law
Federal Bar No. 07304
401 Washington Avenue
Suite 200
Towson, Maryland 21204
(410) 337-5411

## **Jury Demand**

The Plaintiffs, by their attorney, hereby demands a jury trial as to all issues triable by a jury.

*/s/ Howard B. Hoffman*
Howard B. Hoffman, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of April, 2010, a copy of the foregoing Plaintiffs' Third Amended Collective Action Complaint Under The Fair Labor Standards Act For Money Damages, along with a redline copy, was filed via the Electronic Case Filing System (ECF) maintained by the U.S. District Court for the District of Maryland, and is available for viewing and downloading from the ECF system.

/s/ *Howard B. Hoffman*
Howard B. Hoffman