IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CRAIG DORSEY, et al.    *
                        *
                        *
                        *
    v.                  *    Civil No. CCB-10-92
                        *
                        *
TGT CONSULTING, LLC, et al.    *
                        *
                     ******

**MEMORANDUM**

Craig Dorsey, a former server at the Greene Turtle bar and restaurant at BWI Airport, brought this suit for minimum wage and overtime violations on behalf of himself and similarly situated individuals against The Greene Turtle Franchise Corporation, various related companies, and two executives of those companies. On March 15, 2013, the court approved the parties' settlement of $240,000, which is to be shared by 52 plaintiffs. Now pending before the court is the plaintiffs' motion for attorneys' fees and costs pursuant to the Fair Labor Standards Act of 1938 ("FLSA") and, as applicable, the Maryland Wage and Hour Law, the D.C. Minimum Wage Act, Fed. R. Civ. P. 54(d)(2)(A), and Local R. 109.2.[1] The plaintiffs seek an award of $467,020.00 in attorneys' fees[2] and $7,183.53 in costs, as well as an "enhancement" for attorney

---

[1] The corporate defendants—including The Greene Turtle Franchising Corp., TGT Consulting, LLC, The Greene Turtle BWI, LLC, The Greene Turtle Annapolis, Inc., Never Nervous, Inc., d/b/a Greene Turtle (Laurel, MD), The Greene Turtle Salisbury, LLC, The Greene Turtle Towson, LLC, and Turtle Shell Enterprises, LLC—responded to the plaintiffs' motion. Individual defendants Teri DeVito and J. Michael Sanford adopted the corporate defendants' response in its entirety.

[2] The plaintiffs request fees of $259,740.00 for Howard B. Hoffman, $141,840.00 for Bradford W. Warbasse, $40,280.00 for Stephen J. Springer, and $7,117.50 for James Edward Rubin. They also request compensation of $14,820.00 for legal assistant Ryan Cohen, $2,472.50 for law clerk Liz Shen, and $230.00 for paralegal Cheryl Dunaway. Based on those numbers, the court concludes that the plaintiffs are actually requesting $466,500.00 in fees.

1

Howard B. Hoffman of $17,052.96 and a supplemental payment of $18,165.80[3] for the preparation of their reply brief. Also pending is the corporate defendants' motion for leave to file a surreply.[4] The parties have fully briefed the issues, and no oral argument is necessary. *See* Local R. 105.6. For the reasons stated below, attorneys' fees in the amount of $407,270.00 and costs in the amount of $6,101.68 will be awarded. A supplemental payment of $10,410.00 will be awarded to plaintiffs' counsel for the preparation of their reply. Hoffman will not receive a fee enhancement or prejudgment interest.

## ANALYSIS

Successful plaintiffs in FLSA actions are entitled to reasonable attorney's fees and costs. 29 U.S.C. § 216(b). Although the payment of attorney's fees and costs to employees prevailing under the FLSA is mandatory, "[t]he amount of the attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). In deciding the amount of attorney's fees to award, the court must calculate the lodestar, or "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious . . . case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). According to the Supreme Court, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective." *Id.*

Historically, courts have assessed the reasonableness of fee petitions by considering the following "*Johnson* factors":

---

[3] Based on the hourly rates and billable hours proposed by plaintiffs' counsel, (*see* Pls.' Reply, ECF No. 219, at 24 n.19), they are requesting $18,150.00 in fees and $15.80 in costs.
[4] The motion for leave to file a surreply will be denied. The surreply either does not address new matters or addresses matters that could have been raised earlier in the corporate defendants' response. *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 605–06 (D. Md. 2003), *aff'd*, 85 Fed. App'x 960 (4th Cir. 2004).

> (1) the time and labor required in the case, (2) the novelty and difficulty of the questions presented, (3) the skill required to perform the necessary legal services, (4) the preclusion of other employment by the lawyer due to acceptance of the case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the time pressures imposed in the case, (8) the award involved and the results obtained, (9) the experience, reputation, and ability of the lawyer, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship between the lawyer and the client, and (12) the fee awards made in similar cases.

*In re Abrams & Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010) (citation omitted). The Supreme Court in 2010 expressed some doubt as to the reliability of this approach, *see Perdue*, 559 U.S. at 550–51, but the Fourth Circuit has indicated that the *Johnson* factors may properly be used to "inform" and sometimes "adjust" the calculation of the lodestar number. *See McAfee v. Boczar*, 738 F.3d 81, 89 (4th Cir. 2013). Thus, the court considers the *Johnson* factors "in conjunction with the lodestar methodology" and, "to the extent that any of these factors already has been incorporated into the lodestar analysis, [it does] not consider that factor a second time." *E. Associated Coal Corp. v. Dir., Office of Workers' Compensation Programs*, 724 F.3d 561, 570 & n.5 (4th Cir. 2013).

As a preliminary matter, the court notes that the defendants do not challenge plaintiffs' counsel's proposed hourly rates. Counsel for the plaintiffs request the following hourly rates: (1) $300.00 for Hoffman; (2) $400.00 for attorney Bradford W. Warbasse; (3) $400.00 for attorney Stephen J. Springer; and (4) $325.00 for attorney James Edward Rubin. They also seek reimbursement at $115.00 per hour for law clerk Liz Shen's time, reimbursement at $100.00 per hour for legal assistant Ryan Cohen's time, and reimbursement at $100.00 per hour for paralegal Cheryl Dunaway's time. The proposed hourly rates generally represent the upper end of the accepted rates for lawyers and law clerks with comparable experience. *See* Local R., App. B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases. Moreover, the rates are

consistent with hourly rates previously awarded by the court. *See Nelson v. A & H Motors, Inc.*, No. JKS-12-2288, 2013 WL 388991, at *2 (D. Md. Jan. 30, 2013) (awarding Hoffman an hourly rate of $300.00); *Durham v. Jones*, No. WMN-10-2534, 2012 WL 3985224, at *9 (D. Md. Sept. 10, 2012) (same); *Spencer v. Cent. Servs., LLC*, No. CCB-10-3469, 2012 WL 142978, at *4 (D. Md. Jan. 13, 2012) (same); *see also Chapman v. Ourisman Chevrolet Co., Inc.*, No. AW-08-2545, 2011 WL 2651867, at *14, *16 (D. Md. July 1, 2011) (awarding Hoffman and Warbasse their customary hourly rates of $300.00 and $400.00, respectively).[5] Thus, the court accepts the proposed hourly rates in this case as reasonable, and shall apply them in calculating the lodestar.[6]

### A.

The defendants put forth seven arguments as to why hours not reasonably expended must be deducted from the lodestar calculation. The court will respond to each in turn.

### 1.

The defendants challenge the number of hours plaintiffs' counsel dedicated to written discovery responses as well as the total number of hours dedicated to discovery. (*See* Defs.' Opp'n, ECF No. 217, at 18.) According to the defendants, plaintiffs' counsel claim approximately 280 billable hours on written discovery responses. Plaintiffs' counsel dispute this characterization of their time, asserting that they claim "approximately 150 hours of attorney/legal assistant time . . . which was spent gathering information from Plaintiffs,

---

[5] Unpublished opinions are for the soundness of their reasoning, not for any precedential value.
[6] In addition to not challenging plaintiffs' counsel's proposed hourly rates, the defendants do not oppose the 21.5 hours claimed for Shen or the 2.3 hours claimed for Dunaway, which are reflected in detailed time sheets. (*See* Shen's Time Sheet, ECF No. 215-14; Springer's Time Sheet, ECF No. 216-1, at 11.) The court is satisfied with the number of hours claimed for Shen's work, and will award reimbursement for 21.5 hours of her time, for a total of $2,472.50. The court also will award compensation for 2.3 hours of Dunaway's time, for a total of $230.00.

answering individualized inquiries, and responding to the individualized discovery." (Pls.' Reply, ECF No. 219, at 7.)

The court need not decide how many hours plaintiffs' counsel specifically dedicated to written discovery responses, because it finds a reduction of the total hours spent on discovery is warranted. Having awarded the upper end of accepted hourly rates, the court expects counsel and their legal assistant to have worked efficiently, in a manner that reflects their substantial experience. The written discovery responses were substantially similar for each plaintiff, and relatively few depositions were taken. The court will reduce plaintiffs' counsel's fees for "written discovery" and "depositions" by approximately 20%, so that Hoffman's fee will be reduced by 27.4 hours (*see* Hoffman's Time Sheet, ECF No. 215-5, at 28, 31), Warbasse's by 30.4 hours (Warbasse's Time Sheet, ECF No. 215-7, at 11–12), Springer's by 1.5 hours (*see* Springer's Time Sheet, ECF No. 216-1, at 5), Rubin's by 0.6 hours (Rubin's Time Sheet, ECF No. 215-13, at 1–3), and Cohen's by 29.6 hours (Cohen's Time Sheet, ECF No. 215-15, at 7).

**2.**

The defendants argue that plaintiffs' counsel may not obtain fees for discovery activities taking place during the thirty-day period beginning November 1, 2012. According to the defendants, the parties agreed to a thirty-day stay of discovery, but plaintiffs' counsel assert that no such stay existed. Plaintiffs' counsel are correct that the parties did not make a formal request for a stay, nor was a stay entered on the court's docket. By contrast, on previous occasions, the parties noted their agreement to stay proceedings in status reports submitted to the court, (*see* Defs.' Status Report, ECF No. 102; Defs.' Status Report, ECF No. 104), or filed a joint request for a stay. (*See* Joint Request for Stay, ECF No. 205.)

Furthermore, upon reviewing the emails submitted by both sides, the court agrees with plaintiffs' counsel that the parties did not informally agree to stay proceedings. Hoffman's November 1, 2012, email put in writing his understanding of a previous conversation with defense counsel, requesting that they "let [him] know if [he has] left anything out of this framework, or confirm that [they] are all on the same page." (Hoffman Nov. 1, 2012, Email, ECF No. 219-5, at 1.) In essence, his email was an offer to enter into a stay. The next day, Warbasse wrote to defense counsel, again requesting "written confirmation" that they agree to the terms contained in Hoffman's November 1, 2012, email. (Warbasse Nov. 2, 2012, Email, ECF No. 219-6, at 1.) Defense lawyer Ronald W. Taylor indicated he would reject the terms outlined in Hoffman's email, responding that "there are some points that are not correct and/or need to be discussed." (Taylor Nov. 2, 2012, Email, ECF No. 219-7, at 1.) Finally, later that day, Taylor wrote to plaintiffs' counsel outlining different terms from those contained in Hoffman's email. (Taylor, Nov. 2, 2012, Email, ECF No. 219-9, at 1.) When Taylor proposed different terms, he effectively rejected the offer to enter into a stay and provided plaintiffs' counsel with a new offer. Hoffman unequivocally rejected Taylor's counteroffer in a November 7, 2012, email. (Hoffman Nov. 7, 2012, Email, ECF No. 219-10, at 1.) Accordingly, the court will not reduce plaintiffs' counsel's hours based on the alleged stay.

The defendants also ask the court to deny the request for attorneys' fees and costs stemming from plaintiff Susan Clasen's bankruptcy case, which was initiated during the alleged stay. Plaintiffs' counsel seek compensation of $1,097.65 for attorney Lori Simpson's time as a cost, not an attorney's fee. They also request fees for their own time spent pursuing Clasen's bankruptcy case. Plantiffs' counsel explain that they retained attorney Simpson to reopen Clasen's bankruptcy case; they believed Simpson's assistance was necessary to ensure the

bankruptcy proceedings did not prevent Clasen's participation in the FLSA lawsuit. According to the defendants, "Plaintiffs' decision to incur additional expenses by pursuing a bankruptcy claim and contacting a bankruptcy lawyer should not fall on Defendants as this case arose under the FLSA." (Defs.' Opp'n at 9.) The court must agree with the defendants. Clasen's bankruptcy case was a separate, personal issue for which she was responsible. Therefore, plaintiffs' counsel may not recover the $1,097.65 claimed for Simpson's services.[7] The court also will reduce plaintiffs' counsel's hours for the time spent assisting with Clasen's bankruptcy case and communicating with bankruptcy counsel. Hoffman's fee will reduced by 4.4 hours (*see* Hoffman's Time Sheet at 11–13, 15), and Springer's fee will be reduced by 1.3 hours (*see* Springer's Time Sheet at 3).

### 3.

The defendants object to the number of hours dedicated to the plaintiffs' motion for attorneys' fees as unreasonable and excessive. The parties disagree as to the number of hours spent on the motion for attorneys' fees; the defendants indicate that plaintiffs' counsel spent 61 hours on the motion, while plaintiffs' counsel insist they spent, at most, 41 hours. In particular, according to plaintiffs' counsel, Hoffman worked on the motion for 34.2 hours, Warbasse for 4.7 hours, and Rubin for 2.1 hours.

Although plaintiffs' counsel express confusion as to how the defendants arrive at 61 hours, it is clear to the court that they do so by relying on plaintiffs' counsel's own time sheets. (*See* Hoffman's Time Sheet at 51–52; Warbasse's Time Sheet at 17–18; Rubin's Time Sheet at 3.) Their detailed time sheets claim the following hours for the preparation of the fee petition:

---

[7] Other than their objection to Simpson's services, the defendants do not challenge the costs requested by plaintiffs' counsel. The court is satisfied that the remaining amount of costs is reasonable, and will award $6,101.68 in costs.

54.9 hours for Hoffman, 4.7 hours for Warbasse, and 2.1 hours for Rubin. Now that plaintiffs' counsel claim only 34.2 hours for Hoffman's work on the fee petition, the court will reduce his hours accordingly. Thus, Hoffman's fee will be reduced by 20.7 hours.

As for the fees requested for the preparation of the reply brief, Hoffman seeks 51.5 hours, Warbasse seeks 4.8 hours, and Rubin seeks 2.4 hours. The court cannot conclude that Hoffman's 51.5 hours are reasonable in light of the 34.2 hours he dedicated to the initial motion. Moreover, Hoffman's hours are not reasonable given his approximately fourteen years of experience. Although his experience merits a $300.00 hourly rate, it also comes with the expectation that he works efficiently. Plaintiffs' counsel note that the court in *Chapman* "awarded the full value for the requested time for the preparation of a 22 page Reply [in support of a motion for attorneys' fees]." (Pls.' Reply at 13.) But in that case, counsel only requested compensation for 18.3 hours. *Chapman*, 2011 WL 2651867, at *18 n.11. Recognizing that this case involved a document of similar length—but also entailed a higher degree of success for plaintiffs' counsel than *Chapman*—the court will reduce Hoffman's hours by approximately half, to 25.7 hours.

### 4.

The defendants assert that plaintiffs' counsel may not recover fees for hours spent on unsuccessful motions—in, particular, their (1) motion for sanctions (ECF No. 138), (2) motion in limine (ECF No. 139), (3) opposition to defendants' motion for an extension of time (ECF No. 147), (4) motion to strike (ECF No. 149), (5) motion for a scheduling order (ECF No. 155), (6) reply in support of the motion for sanctions (ECF No. 164), (7) reply in support of the motion in limine (ECF No. 163), (8) cross-motion for summary judgment (ECF No. 141), and (9) reply in

support of the cross-motion for summary judgment (ECF No. 165). The Supreme Court has explained:

> Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.

*Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983). Put another way, "the appropriate inquiry concerns whether the claims on which the plaintiff prevailed are related to those on which he did not." *Brodziak v. Runyon*, 145 F.3d 194, 197 (4th Cir. 1998). The court may not award fees for unsuccessful claims that are unrelated to successful ones. *See id.* "When, however, all claims involve a common core of facts . . . [m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id.* (citations and internal quotation marks omitted); *Andrade v. Aerotek, Inc.*, 852 F. Supp. 2d 637, 640–41 (D. Md. 2012); *see also Imgarten v. Bellboy Corp.*, 383 F. Supp. 2d 825, 839 (D. Md. 2005) ("A plaintiff who was unsuccessful at a stage of litigation that was, nevertheless, a necessary step to ultimate victory is entitled to attorneys' fees even for the unsuccessful step.").

Plaintiffs' counsel may not recover for the time spent preparing the motion for sanctions or the reply in support of the motion for sanctions. The motion, which was rejected in the court's August 20, 2012, Memorandum opinion, was unrelated to any successful claims in this case and did not aid the parties in reaching a settlement. Much the opposite, the motion appears to have fueled the contentious relationships among counsel, which, in turn, slowed the settlement process. The court will subtract 3.5 hours from Hoffman's fee (*see* Hoffman's Time Sheet at 37–38, 40–42), 1.7 hours from Warbasse's fee (*see* Warbasse's Time Sheet at 14–15), 8.9 hours

from Springer's fee (*see* Springer's Time Sheet at 6–9), and 0.5 hours from Rubin's fee (*see* Rubin's Time Sheet at 2).

The court also agrees with the defendants that plaintiffs' counsel may not claim billable hours for the preparation of the motion in limine or the related reply. The court's August 20, 2012, opinion explained that the testimony at issue in the motion in limine "does not affect the outcome of the motions for summary judgment and decertification." (ECF No. 170 at 16–17 n.6.) Given its earlier determination, the court cannot conclude that plaintiffs' unsuccessful motion was related to successful claims in this case. The court will subtract 29.7 hours from Hoffman's fee (*see* Hoffman's Time Sheet at 37–38, 40–41), 5.1 hours from Warbasse's (*see* Warbasse's Time Sheet at 14), and 2.4 hours from Springer's (*see* Springer's Time Sheet at 8–9).

Additionally, plaintiffs' counsel may not claim hours for the opposition to defendants' motion for an extension of time, which was neither successful nor in any way related to successful claims. But plaintiffs' counsel state that they are not seeking compensation for the time spent on this document, and Hoffman's time sheet so confirms. (*See* Hoffman's Time Sheet at 54.) Accordingly, the court need not reduce billable hours for the preparation of the opposition brief. Likewise, the court will not subtract from counsel's fees the hours spent on the motion to strike. Contrary to the defendants' claim, the plaintiffs were successful on this motion; indeed, the court granted the motion to strike. (ECF No. 170 at 31.)

The court will deduct from plaintiffs' counsel's hours the time spent preparing the motion for a scheduling order. This motion was denied as moot, and merited only a one-sentence footnote discussion in the court's Memorandum. (*See* ECF No. 170 at 32 n.15.) Time should have been deducted in the exercise of billing judgment. Fees will therefore be reduced as follows: 3.2 hours from Hoffman's fee (Hoffman's Time Sheet at 39), 0.2 hours from

Warbasse's fee (*see* Warbasse's Time Sheet at 14), and 1.3 hours from Springer's fee (*see* Springer's Time Sheet at 7).

Finally, the court will not reduce fees for time spent on plaintiffs' cross-motion for summary judgment and their related reply. The defendants are correct that the court denied the plaintiffs' motion, rejecting their argument regarding the retroactivity of a new tip notification regulation. But in addition to narrowing the arguments plaintiffs could pursue, the court identified a genuine factual dispute as to whether Greene Turtle properly informed its employees of tip credit provisions of the FLSA. The court's ruling on this factual issue allowed the parties to assess the relative strength of their cases moving forward. Indeed, both parties acknowledged in their joint motion for approval of the FLSA settlement agreement that they took into account the factual dispute in determining what constitutes a reasonable compromise of the case. (*See* Joint Mot., ECF No. 213, at 3–5.) The plaintiffs' cross-motion, therefore, was related to their successful settlement of this case. Plaintiffs' counsel are entitled to reasonable fees for the cross-motion for summary judgment and the related reply.

**5.**

The defendants challenge counsel's request for fees relating to their "boilerplate" motion for conditional class certification, asking the court to reduce Hoffman's time preparing this motion from 36.2 hours to 6.2 hours. It is true that the approximately three-page-long discussion of the certification standard is substantially the same as the discussion provided in the motion for conditional class certification in *Chapman*. (*Compare* Mot. to Certify Class, ECF No. 19, at 6–9, *with Chapman v. Ourisman*, No. AW-08-2545, ECF No. 12, at 4–7.) The court cannot conclude, however, that this qualifies the entire motion to certify as boilerplate. The fact that the motion at issue is twenty-two pages in length, while the *Chapman* motion was only thirteen pages long,

11

reflects that it contains substantial discussion particular to the facts of this case. The motion cites extensively to exhibits and other documents to make a sufficient factual showing that plaintiffs are "similarly situated" and, therefore, may be certified as a class. The court is satisfied that Hoffman's 36.2 billable hours are reasonable.

**6.**

According to the defendants, plaintiffs' counsel should not recover fees for hours spent filing opt-in notices with the court and, thus, Hoffman's fee should be reduced by 25.9 hours. The defendants point out that the opt-in notices were filled out by the plaintiffs themselves, not their lawyers; thus, counsel are seeking fees for the "purely administrative" task of filing the forms on the court's electronic filing system. (Defs.' Opp'n at 14.) Plaintiffs' counsel argue that the defendants have mischaracterized their time, and Hoffman billed 18.7 hours for tasks including filing opt-in notices, reviewing the record, reviewing the forms for correctness, and contacting clients by phone or in writing. (*See* Hoffman's Time Sheet at 16–18, 53.)

As an initial matter, the court agrees with the defendants that simply filing opt-in notices is a clerical task not recoverable in attorney's fees. *See Kabore v. Anchor Staffing*, No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012).[8] But the court recognizes that not all of Hoffman's time was spent performing ECF filings; indeed, some of Hoffman's time entries indicate that he completed other tasks in addition to filing the opt-in notices. (*See* Hoffman's Time Sheet at 16–18, 53.) Where Hoffman's time entries indicate only that he filed opt-in notices, however, the court will assume the time was not dedicated to any other task. The court will therefore reduce Hoffman's hours by the 4.2 hours dedicated solely to filing opt-in notices.

---

[8] Hoffman evidently agrees with the court's and the defendants' assessment. In another case where attorney's fees are at issue, he characterized time spent filing documents as "**secretarial** time." (*Manna et al. v. Johnny's Pizza, Inc. et al.*, No. CCB-13-721, ECF No. 23, at 23.)

Relatedly, the court notes that Hoffman claims 1.7 hours for filing other documents—in particular, the fifth amended complaint, a motion to exclude and related exhibits, a motion for a scheduling order, various reply briefs, a proposed scheduling order, a motion to extend the scheduling order, a motion to extend time to respond to discovery, a motion to compel interrogatories, and a joint motion to stay. (*See id.* at 19, 38, 40, 42, 43.) Accordingly, the court finds another reduction in Hoffman's time is warranted, and will subtract 1.7 hours from his fee. The court also will reduce Rubin's fee by the 0.3 hours he spent filing a motion to compel. (*See* Rubin's Time Sheet at 2.)

**7.**

The defendants object to the nearly 100 hours claimed by plaintiffs' counsel for settlement activities, and request an 80% reduction in the hours claimed so that Hoffman's fee is reduced by 43 hours, Warbasse's by 30 hours, and Rubin's by 0.9 hours. The court agrees with the defendants that some reduction is warranted. As detailed by both sides, relationships among counsel were contentious. Plaintiffs' counsel fault defense counsel for their difficulties, (*see, e.g.*, Defs.' Resp. to Mot. to Certify Class, ECF No. 20, at 20–21), but there is plenty of blame to be shared. Upon reviewing the many emails submitted by both sides, the court notes a disappointing lack of professionalism and courtesy in a number of plaintiffs' counsel's messages. (*See, e.g.*, Hoffman Jan. 18, 2013, Email, ECF No. 217-2, at 2; Hoffman Jan. 13, 2013, Email, ECF No. 217-16, at 2; Hoffman Jan. 11, 2013, Email, ECF No. 217-17, at 2.) The lack of professionalism evidenced in those messages is consistent with the defendants' claims about plaintiffs' counsel's behavior during the entire case, which appears to have strained the negotiation process and delayed the parties in reaching a settlement. Recognizing the defendants' counsel also bear responsibility for the delay, however, the court will reduce the

amount of fees requested for settlement by only 20%, so that 10.9 hours will be subtracted from Hoffman's time (*see* Hoffman's Time Sheet at 51), 6.7 hours from Warbasse's time (*see* Warbasse's Time Sheet at 17), 0.6 hours from Springer's time (*see* Springer's Time Sheet at 11), and 0.2 hours from Rubin's time (*see* Rubin's Time Sheet at 2).

**B.**

In addition to identifying particular hours that should be deducted from the lodestar calculation, the defendants argue that the number of hours claimed by plaintiffs' counsel is unreasonable given their "limited success." Although the court recognizes that they did not obtain the approximately $470,000.00 they earlier sought, (*see* Oct. 1, 2012, Letter from Hoffman, ECF No. 217-15, at 2), it cannot agree that plaintiffs' counsel had "limited" success in obtaining a $240,000.000 settlement. *See McAfee*, 738 F.3d at 92. As explained by counsel, plaintiffs received at least 108% of their losses, although they did not obtain full liquidated damages. Their recoveries are significant, with many plaintiffs receiving thousands of dollars. (*See* Chart of Pls.' Settlement Amounts, ECF No. 213-3 at 66–67.) *Cf. Chapman*, 2011 WL 2651867, at *18 (reducing attorney's fees where counsel recovered only "a marginal amount of the damages sought"). The recoveries exceeded the defendants' expectations that "the most that Plaintiffs could collectively hope to obtain is approximately $137,000 with respect to credit wages in dispute and approximately $3,000 with respect to the disputed overtime wages." (Mar. 29, 2011, Letter from Taylor, ECF No. 215-20, at 1.) Having already taken account of unsuccessful motions for which plaintiffs' counsel may not recover,[9] the court does not find it

---

[9] The court also recognizes that plaintiffs' counsel "wrote off" about 10–15 % of their hours, a number of which related to plaintiffs dismissed from this litigation. (*See* Pls.' Mot. for Attorneys' Fees, ECF No. 215, at 20 & n.5.)

appropriate to order another reduction of billable hours based on plaintiffs' counsel's level of success on the remaining claims in this case.

C.

The defendants request a 25% reduction of plaintiffs' counsel's award based on the *Johnson* factors. The court has considered all the *Johnson* factors in determining reasonable attorneys' fees but notes that the defendants' analysis mainly reiterates arguments already considered by the court. For instance, the defendants repeat that plaintiffs' counsel failed to act in good faith during settlement discussions and, in light of the boilerplate nature of plaintiffs' written discovery responses, inflated hours dedicated to discovery. The defendants also argue that plaintiffs' counsel's skills and knowledge should affect their fee award, an issue the court considered in determining a reasonable hourly rate and deciding whether hours dedicated to certain tasks are commensurate with the lawyers' experiences. Additionally, the defendants assert again that plaintiffs' counsel had limited success. They also point to examples of plaintiffs' counsel's aggressive behavior, and cases where the court awarded significantly lower fees than those requested by plaintiffs. As explained above, to the extent that the *Johnson* factors are accounted for in the lodestar analysis, they will not be considered a second time in a way that would amount to "double-counting." *See E. Associated Coal Corp.*, 724 F.3d at 570. Accordingly, the court does not find it appropriate to order an additional reduction based on reasons already addressed in the above analysis.

D.

The defendants claim the request for a fee enhancement or prejudgment interest is unwarranted. Enhancements to the lodestar figure "may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552 (citation and internal quotation marks omitted); *see*

*also Daly v. Hill*, 790 F.2d 1071, 1081 (4th Cir. 1986) (suggesting that an enhancement may be awarded to account "for the effect of delay in payment on the value of the fee"). The fee applicant has the burden to prove the enhancement is necessary and must offer "specific evidence" supporting the award. *Perdue*, 559 U.S. at 553 (internal quotation marks omitted).

Here, plaintiffs' counsel argue that an enhancement, or prejudgment interest, is warranted due to the delay in payment of fees and costs. To support this argument, they rely on *Ohio River Valley Envtl. Coal., Inc. v. Green Valley Coal Co.*, 511 F.3d 407 (4th Cir. 2007). In that case, the Fourth Circuit determined that an award of prejudgment interest was appropriate to account for the delay in payment. *Id.* at 419. The court reasoned that, to account for delay, a fee award based on "historical fee rates" needed to be supplemented by prejudgment interest. *Id.*; *see also Daly*, 790 F.2d at 1081 (vacating a fee award when the district court "adopt[ed] historic rates without considering the effect of delay in payment on the value of the fee"). Unlike counsel in *Green Valley Coal*, Hoffman's award is not based on a historically lower fee rate. Rather, he will be compensated at an hourly rate of $300.00, which represents the upper end of currently accepted rates for lawyers with comparable experience of about fourteen years.[10] Thus, plaintiffs' counsel's reliance on *Green Valley Coal* is misplaced.

Plaintiffs' counsel also claim that Hoffman's award will be unfairly "diluted" due to changes in tax rates during the pendency of the case. But changes in the tax structure do not constitute "exceptional circumstances" justifying an enhancement. Indeed, those changes are a common occurrence. Accordingly, Hoffman's request for an additional $17,052.96 will be denied.

---

[10] The rates claimed for Hoffman's law clerk and legal assistant also represent the mid to upper end of the accepted rates.

## CONCLUSION

For the reasons stated above, the court will award attorneys' fees in the amount of $407,270.00 and costs in the amount of $6,101.68. The court also will award a supplemental payment of $10,410.00 in fees to plaintiffs' counsel for the preparation of their reply brief. The court will not, however, award Hoffman an enhancement or prejudgment interest. A separate Order, which details the fees recoverable by each attorney, follows.


February 4, 2014                                                                                   /s/
Date                                                                                           Catherine C. Blake
                                                                                             United States District Judge